UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEEL DYNAMICS, INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO. 1:06-CV-00110 |
| ) | |
| BIG RIVER ZINC CORPORATION, ) | |
| ) | |
|     Defendant. ) | |

## OPINION AND ORDER

Before the Court is a Motion to Dismiss, Stay or Transfer Action (Docket # 7) filed by Defendant Big River Zinc Corporation ("Big River"), seeking to dismiss the complaint filed by Plaintiff Steel Dynamics, Inc. ("SDI"), on the grounds that the parties contractually selected the courts of the State of Illinois as the exclusive forum for deciding disputes arising out of the parties' agreement to purchase and sell zinc product.[1] (Def.'s Mot. to Dismiss at 1.) SDI, however, opposes Big River's motion, arguing that under the Uniform Commercial Code (UCC), Big River's forum selection clause was a material alteration to the contract and, as a result, did not become part of the agreement between the parties. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 1.)

For the reasons set forth herein, the Court will GRANT Big River's motion to dismiss the

---

[1] Alternatively, Big River, who filed an action against SDI in the District Court for the Southern District of Illinois six days prior to Big River filing the instant suit, argues that this suit should be dismissed under the "first to file" rule. (Def.'s Mot. to Dismiss at 1.) As an additional alternative, Big River requests that the Court stay the instant action pending the outcome of the Illinois action or transfer this case to the District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). (Def.'s Mot. to Dismiss at 1.) However, because the Court ultimately concludes in Big River's favor on the basis of its primary argument, it is not necessary to consider these alternative arguments.

instant action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Big River, a Delaware corporation with its principal place of business in Sauget, Illinois, produces and sells zinc metal and alloys for various industrial applications. (Def.'s Mot. to Dismiss, Ex. 1 (hereinafter the "Big River Compl.") ¶ 1.) SDI, an Indiana corporation, operates, among other things, a steel manufacturing plant in Butler, Indiana. (Compl. (hereinafter the "SDI Compl.") ¶ 1.) Since 1999, Big River has sold quantities of zinc product to SDI for its use in manufacturing and fabricating steel products.[2] (Big River Compl. ¶ 6; SDI Compl. ¶ 4.)

On October 10, 2003, Big River sent the following email to SDI, confirming its sale of zinc product to SDI earlier that day:[3]

> Big River confirms the following strip jumbo sales today:
>
> 750 short tons per month Nov 03 thru [sic] Dec 05 to Jeffersonville, IN and 1,200 short tons per month Jul 04 thru Dec 05 to Butler, IN at the delivered price of $0.4785 per pound to both locations on your PO # 27282.
>
> We will forward a more formal confirmation later.

(SDI Compl., Ex. C.) Additionally, in a letter to SDI dated that same day, Big River stated:

> Big River confirms with the attached contracts, the sale today of:
>
> • Approximately 21,600 short tons of CGG Strip Jumbos at 1,200 short tons per month from July 2004 through December 2005 delivered to Butler, IN at $0.4785 per pound.

---

[2] Big River states that the sale of zinc product to SDI was at times "governed by long-term agreements" and at other times "based on individual orders" placed by SDI. (Big River Compl. ¶ 6.) SDI represents, however, that Big River "had been supplying zinc to SDI pursuant to SDI's purchase order." (SDI Compl. ¶ 4.) This factual conflict, however, is not ultimately pertinent to the Court's decision here.

[3] Both parties indicate that they reached an oral agreement on October 10, 2003, to purchase and sell the zinc product described in the confirming email and letter. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 8, 10; SDI Compl., Exs. C, D.)

2

- Approximately 19,500 short tons of CGG Strip Jumbos at 750 short tons per month from November 2003 through December 2005 delivered to Jeffersonville, IN at $0.4785 per pound.

If these confirmations meet with your understanding of our agreement, please sign and return one copy of each by fax . . . for our file.

(SDI Compl., Ex. D.)

On or about October 21, 2003, SDI signed and returned to Big River contract no. 90936 (the "Butler Contract"), which governed the sale of 21,600 tons of zinc product for delivery to SDI's Butler facility. (Big River Compl., Ex. 2.) The front page of the Butler Contract included terms such as product specifications, quantity, shipment schedule, freight terms, delivery, routing, price, and payment terms, together with the following phrase: "THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE ARE INCORPORATED HEREIN." (Big River Compl., Ex. 2.) On the reverse side, the following provisions, as well as other terms and conditions, were articulated:

> Seller hereby objects to and shall not be bound by any terms or conditions on Buyer's order forms which attempt to impose any different or additional terms and conditions of sale which are not included herein. This Contract supersedes all prior discussions, agreements, and commitments relative to the Product and constitutes the entire understanding of the parties.
> . . . .
> No amendment, modification, supplement or rescission of this Contract shall be effective unless by a writing signed by Seller.
> . . . .
> This Contract shall be interpreted and construed in accordance with the laws of Illinois. The parties agree that any legal action, suit, or proceeding arising out of or relating to this Contract will be instituted in the appropriate court having jurisdiction over the subject matter in Illinois, which will be the exclusive jurisdiction and venue of the legal proceedings, and each party waives any objection which such party may now or in the future have to the laying of venue of any such action, suit, or proceeding, and irrevocably attorns and submits to the jurisdiction of any such court in any such action, suit, or proceeding.

(Big River Compl., Ex. 2.)

In contrast to its execution of the Butler Contract, SDI never returned a signed copy of contract no. 90934 (the "Jeffersonville Contract"), which governed the sale of 19,500 tons of zinc product for delivery to SDI's Jeffersonville facility. (Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 2 n.3.) The Jeffersonville Contract articulated the same terms and conditions as set forth on the reverse side of the Butler Contract. (Big River Compl., Ex. 1.)

On October 29, 2003, SDI "revised [its] pre-existing purchase order," no. 27282 (the "Purchase Order"), to include the purchase and delivery of 21,600 tons of zinc product to SDI's Butler facility at the price of $0.4785 per pound. (SDI Compl. ¶ 5.) The reverse side of the Purchase Order contained, in addition to other terms, an integration clause, a mandatory arbitration clause, and a choice of law and forum selection provision identifying Indiana as the relevant law and forum.[4] (SDI Compl., Ex. A-1.) Big River, however, never signed the original,

---

[4] More specifically, the pertinent provisions in the Purchase Order are as follows:

Controlling Terms and Conditions.  Unless otherwise specified in writing by Buyer, Buyer agrees to purchase the goods or services described herein from Seller only on the express condition that Seller assents to the exact terms and conditions set forth in this Contract and to no other terms and conditions.  Buyer objects to and shall not be bound by any such other terms or conditions, either in Seller's offer, its expression of acceptance, or its confirmation or other communication which is different from, inconsistent with, or in addition to Buyer's terms and conditions; and any such conflicting terms and conditions are hereby expressly rejected. . . .
. . . .
Entire Agreement.  This Contract constitutes the entire agreement between Seller and Buyer with respect to the subject matter hereof and supersedes any prior or other agreements, written or oral, between the parties.  No amendment, modification, waiver or release of any provision hereof shall be binding upon Buyer or Seller unless in writing, signed by Buyer's or Seller's authorized representative, as the case may be.
. . . .
Applicable Law; Forum.  This Contract shall be governed by the laws of the State of Indiana.  Both Seller and Buyer consent to personal jurisdiction in Indiana and to jurisdiction of any state o[r] federal court in the district in Indiana where Buyer's plant is located; and both parties agree that venue shall also be proper and deemed convenient therein.
. . . .
Alternative Dispute Resolution.  Buyer and Seller agree that the prompt and effective resolution of any disputes that may arise hereunder is in the best interest of everyone.  Save for matters requiring injunctive relief or specific performance, the parties agree that all disputes hereunder shall be resolved by arbitration in Indiana . . . . Any finding or award by the arbitrator(s) shall be binding in any related judicial action between the parties, and may be entered as a judgment in any state or federal court in Indiana for the district in which the Buyer's plant is located.
. . . .

4

nor the revised, Purchase Order. (Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 3; SDI Compl., Exs. A, A-1.)

On December 10, 2003, SDI "issued a second revision" to its Purchase Order, reflecting the purchase and delivery of 19,500 tons of zinc product to SDI's Jeffersonville facility at the price of $0.4785 per pound. (SDI Compl. ¶ 6.) As with the first revised Purchase Order, this second revised Purchase Order was never signed by Big River. (Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss at 3; SDI Compl., Ex. B.)

Soon thereafter, Big River began to ship quantities of zinc product to SDI on a monthly basis, referencing SDI's Purchase Order number on its invoices and bills of lading. (SDI Compl. ¶¶ 9, 10.) However, in June 2005, Big River and SDI orally agreed, purportedly due to a high inventory level on SDI's end and production issues on Big River's end, that Big River would not ship the June and July shipments, this creating the amount of zinc product now in dispute.[5] (Big River Compl. ¶ 10; SDI Compl. ¶ 11.)

In January 2006, concluding that the Butler Contract and the Jeffersonville Contract had expired as of December 31, 2005, Big River stopped shipping zinc product to SDI. (Big River Compl. ¶ 11.) Apparently, Big River also concluded that it was no longer bound to the price of $0.4785 per pound, because on February 14, 2006, it sent invoices to SDI seeking to collect a

---

If any term or condition is unacceptable to Seller, Seller must notify Buyer in writing within 10 days of its receipt hereof, and Seller's failure to return a signed copy hereof shall not absolve Seller from its obligations hereunder.

(SDI Compl., Ex. A-1.)

[5] More specifically, Big River argues that once SDI declined these shipments, Big River had the right pursuant to the Butler Contract and the Jeffersonville Contract to sell the zinc product to third parties, which it did. (Big River Compl. ¶ 10.) SDI, however, purports that the parties agreed to merely "put off" the shipments until the end of the parties' agreement, and thus contends it was entitled to the disputed zinc product as of December 31, 2005, at the price of $0.4785 per pound. (SDI Compl. ¶ 11.)

higher price per pound for the quantity of zinc product that had already been delivered to SDI the previous month. (Big River Compl. ¶ 15.)

Ultimately, on March 2, 2006, following some exchange between the parties concerning the zinc product in dispute, SDI's outside counsel sent a letter to Big River summarizing the status of the controversy:

> As you are aware, on or about October 21, 2003 SDI and Big River . . . entered into a forward pricing contract whereby Big River agreed to ship to SDI's Butler plant 21,600 tons of zinc at a price of $0.47850 cents per pound. SDI and Big River . . . also entered into a forward pricing contract whereby Big River agreed to ship to SDI's Jeffersonville plant 19,500 tons of zinc at a price of $0.47850 cents per pound. The total number of tons was 41,400. Pursuant to the contracts, SDI has received 36,460.54 tons of zinc from Big River.
>
> SDI is still due 4,639.46 tons of zinc from Big River pursuant to the parties' contracts. As we understand it, Big River has stated that it does not intend to ship the remaining tons of zinc. Please be advised that Big River is in breach of the contracts as a result of the failure by Big River to deliver the balance of the zinc. If Big River refuses to ship the remaining tons, SDI will have no alternative but to exercise any and all rights under the contracts including, but not limited to, the commencement of litigation and demand for specific performance.
>
> Please call me at your earliest convenience to discuss shipment of the remaining tonnage under the parties' forward pricing agreements. I look forward to hearing from you.

(SDI Compl., Ex. G.)

However, rather than contacting SDI's counsel as suggested in the letter, on March 9, 2006, Big River filed an action against SDI in the District Court for the Southern District of Illinois, *Big River Zinc Corp. v. Steel Dynamics, Inc.*, No. 06-208/GPM (S.D. Ill. filed March 9, 2006), requesting a declaratory judgment that Big River has no obligation to deliver the 4,639.46 tons of zinc product that SDI requests and also seeking monetary damages of $1,428,402.48 (together with interest and costs), which is the amount it asserts is due to Big River for the

6

December 27, 2005, through January 20, 2006, shipments of zinc product to SDI. (Big River Compl. ¶¶ 20-25.)

On March 16, 2006, SDI filed suit in the Dekalb, Indiana, Circuit Court, seeking monetary damages of $4,408,558.70 (together with incidental and consequential damages, interest, and costs), which is purportedly the difference between what SDI paid on the spot market to obtain the disputed quantity of zinc product and the amount SDI would have paid to Big River for the zinc product pursuant to their agreement. (SDI Compl. ¶ 17.) On April 10, 2006, Big River removed the action to this Court on the basis of diversity jurisdiction and two days later filed the instant motion seeking to dismiss, stay, or transfer the action. (Docket # 2, 7.)

## II. DISCUSSION

Here, neither party disputes that on or about October 10, 2003, Big River and SDI orally agreed that SDI would purchase from Big River at the price of $0.4785 per pound 41,100 tons of zinc product – 21,600 of which would be delivered to SDI's Butler facility and 19,500 tons to SDI's Jeffersonville facility. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 8, 10; SDI Compl., Exs. C, D.) However, now that a dispute has developed between the parties, Big River asserts that through SDI's acceptance of the Butler Contract and the Jeffersonville Contract, the parties contractually selected the courts of the State of Illinois as the exclusive forum for deciding disputes arising out of the agreement. (Def.'s Mot. to Dismiss at 1.) SDI adamantly disagrees, contending that under the UCC, Big River's proposed forum selection clause was a "material alteration" to the terms of the parties' agreement, and thus it never became part of the agreement between the parties. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 1.) As will be shown herein, Big River's argument is indeed convincing and ultimately prevails.

7

*A. Applicable Law*

Section 2-207 of the UCC applies "where the parties have already reached an agreement and the standard form is merely a 'confirmation' of that agreement."[6] *Dale R. Horning Co., Inc., v. Falconer Glass Indus., Inc.*, 710 F. Supp. 693, 697 (S.D. Ind. 1989); *see Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1103-04 (7th Cir. 1997); *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1008 (7th Cir. 1996). "A confirmation differs from an acceptance in that if it is a true confirmation, a contract between the parties already exists . . . . The only real question when a confirmation is involved is whether the additional terms became part of the agreement under § 2-207(2)." *Dale R. Horning, Co.*, 710 F. Supp. at 697 n.4 (quoting UCC § 2-207, Official Comment 1; Greenberg, *Rights and Remedies* at 70); *see Echo, Inc.*, 121 F.3d at 1103-04; *Waukesha Foundry, Inc.*, 91 F.3d at 1008.

Specifically, Section 2-207 provides: "[A]dditional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: . . . they materially alter it . . . or . . . notification of objection to them . . . is given within a reasonable time after notice of them is received." 810 Ill. Comp. Stat. 5/2-207; Ind. Code § 26-1-2-207. "A term will materially alter a contract if it results in unreasonable surprise or hardship to the other party." *Trans-Aire Int'l, Inc. v. N. Adhesive Co., Inc.*, No. 83 C 7003, 1988 WL 6665, at *3 (N.D. Ill. Jan. 28, 1988), *aff'd*, 882 F.3d 1254 (7th Cir. 1989); *see Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1336 (7th Cir. 1991). "Terms which materially alter a contract can, however, become part of a contract if they are 'expressly agreed

---

[6] Although the parties disagree on whether their substantive contractual dispute should be governed by Illinois or Indiana law, the dispute does not matter here since both states adopted identical versions of Section 2-207. *See* 810 Ill. Comp. Stat. 5/2-207, 209; Ind. Code § 26-1-2-207, 209. The parties do not dispute, however, that each falls within the definition of a "merchant" under the UCC. *See* 810 Ill. Comp. Stat. 5/2-104; Ind. Code § 26-1-2-104.

8

to by the other party.'" *Trans-Aire Int'l*, 1988 WL 6665, at *3; *see Waukesha Foundry, Inc.*, 91 F.3d at 1003; *Northrop Corp. v. Litronic Indus.*, 29 F.3d 1173, 1174-75 (7th Cir. 1994).

### B. *The Butler Contract*

Because the facts differ with respect to SDI's execution and return of the two agreements to Big River, the Court will analyze them separately, beginning with the Butler Contract.

The record indicates that the parties arrived at an oral agreement on October 10, 2003, regarding the purchase and sale of 41,100 tons of zinc at $0.4785 per pound. Thus, applying Section 2-207 of the UCC, the terms contained in the Butler Contract, which served as a confirmation of the parties' October 10th oral agreement, were proposals for addition to the oral agreement by Big River and would be included in the agreement unless they materially altered it or SDI objected to them within a reasonable period of time. *See* 810 Ill. Comp. Stat. 5/2-207; Ind. Code § 26-1-2-207.

The addition of a forum selection clause, however, has been repeatedly considered a "material alteration" under Section 2-207 of the UCC.[7] *Dale R. Horning Co.*, 710 F. Supp. at 698-99; *Trans-Aire Int'l, Inc.*, 1988 WL 6665, at *3; *Prod. Components v. Regency Door & Hardware*, 568 F. Supp. 651, 654 (S.D. Ind. 1983); *Gen. Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231, 1235 (S.D.N.Y. 1981). "Subtle differences in courts, jurors and law among the states and considerations of litigation expense are factors the Court believes most merchants

---

[7] While generally the question of whether any certain provision materially alters a contract is usually a question of fact to be determined at trial, in the context of a forum selection clause and a motion to dismiss. *Dale R. Horning Co.*, 710 F. Supp. at 698 n.6. The Court "can (and, perhaps must) decide the question of whether the forum selection clause material[ly] alters the agreement as a matter of law." *Id.* The basis for this rule is simple, after a full trial by jury, a decision that the Court never had jurisdiction could result, requiring that the case start all over again in another jurisdiction. *Id.*

would consider important." *Prod. Components*, 568 F. Supp. at 654. Therefore, Big River's forum selection clause would not be deemed part of the parties' agreement, absent SDI's express consent. *See Trans-Aire Int'l*, 1988 WL 6665, at *3.

This brings us to a pivotal, and undisputed, fact – SDI signed and promptly returned the Butler Contract to Big River. In its letter dated October 10, 2003, Big River stated: "If these confirmations meet with your understanding of our agreement, please sign and return one copy of each . . . ." (SDI Compl., Ex. D.) SDI signed and returned the Butler Contract on October 21, 2003, apparently asserting no objections to the agreement.[8] *Compare Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) (enforcing a forum selection clause in a signed form contract, commenting that "[i]f [parties] make a practice of signing contracts without reading them, they must bear the consequences"), *with One Step Up, Ltd. v. Kmart Corp.*, No. 97 Civ. 1469 (WK), 1997 WL 391117, at *2-3 (S.D.N.Y. July 11, 1997) (refusing to enforce a forum selection clause contained in an unsigned purchase order).

Although SDI later sent a revised Purchase Order with a conflicting forum selection clause to Big River, this possible objection to the Butler Contract was ineffective. SDI had already expressly consented to the Butler Contract, and that document provided that no amendment to the contract would be effective "unless by a writing signed by Seller." (Big River Compl., Ex. 2 ¶ 9.) Under Section 2-209(2) of the UCC, "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded . . . ." 810 Ill. Comp. Stat. 5/2-209(2); Ind. Code § 26-1-2-209(2); *see generally Cent. Ill. Pub.*

---

[8] SDI even admits in its response brief that "[o]n or about October 21, 2003, Big River and SDI *entered into* the Agreements that are attached as Exhibits 1 [the Jeffersonville Contract] and 2 [the Butler Contract] to Big River's Complaint . . . ." (Pl.'s Mem. in Resp. to Def.'s Mot. to Dismiss at 2) (emphasis added).

*Serv. Co. v. Atlas Minerals, Inc.*, 965 F. Supp. 1162, 1772 (7th Cir. 1997); *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1284 (7th Cir. 1986). The parties do not dispute that Big River never signed SDI's Purchase Order or any other amendment to the Butler Contract.

Nevertheless, SDI seems to vaguely suggest that an exception to Section 2-209(2) may apply here based on Big River's conduct – that is, Big River's incorporation of SDI's Purchase Order number on its invoices and bills of lading. This exception arises from Section 2-209(4) of the UCC, which provides that an "attempt at modification" failing to satisfy a contractual requirement that any modification must be in writing, may still "operate as a waiver." *American Suzuki Motor Corp. v. Bill Kummer, Inc.*, 65 F.3d 1381, 1386 (7th Cir. 1995). Such an "attempt at modification" can be "through conduct as well as words." *Id*.

However, SDI's waiver argument fails right out of the gate, as SDI never asserts one of the requirements for application of the exception – that it "reasonably relied on the attempted modification." *Id.* ("An attempted modification by words or conduct . . . operates as a waiver only if the party seeking to enforce the attempted modification, reasonably relied on the modification."). Therefore, because SDI expressly consented to the Butler Contract and its forum selection provision was not thereafter modified or waived, Big River's Illinois forum selection clause was incorporated into the parties' agreement and thus applies to the instant dispute.

This determination, however, does not end our inquiry with respect to the Butler Contract, as the Court must next determine whether the forum selection clause is valid and enforceable. *See Nw. Nat'l Ins. Co.*, 916 F.2d at 374. The Seventh Circuit Court of Appeals has

11

held open the question whether federal or state law applies in a dispute over a forum selection clause when the suit is subject to dismissal, as is the case here, rather than subject to a transfer pursuant to *forum non conveniens* under 28 U.S.C. § 1404(a). *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006). As will be shown *infra*, it ultimately does not matter here, as the result is the same under federal, Illinois, or Indiana law.

From a federal perspective, the Seventh Circuit Court of Appeals has stated that "a forum selection clause will be enforced unless it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"[9] *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006); *see also DeJohn v. TV Corp. Int'l*, 245 F. Supp. 2d 913, 921 (N.D. Ill. 2003). With respect to Illinois law, "a court contemplating enforcing a forum selection clause that was freely entered into between parties of roughly equal bargaining power generally considers only one issue: whether the objecting party would effectively be deprived his day in court." *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996). Finally, with respect to Indiana law, forum selection clauses are enforceable if they are freely negotiated and "are reasonable and just under the circumstances and if there is no evidence of fraud or overreaching such that the agreeing party, for all practical purposes, would be deprived of a day in court." *Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 48 (Ind. Ct. App. 2005).

Here, the enforcement of an Illinois forum selection clause with respect to SDI, an

---

[9] The standard under federal law articulated here is used by the Seventh Circuit when analyzing a forum selection clause in light of a motion to dismiss, as is the case here, versus a motion to transfer a case under 28 U.S.C. § 1404(a). *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (1989); *compare M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), *with Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).

Indiana corporation, is warranted under all three legal standards.[10] First, the enforcement of the clause is not unreasonable or unjust, as SDI will not be effectively deprived of its day in court by being required to litigate in an Illinois federal forum, and travel to Illinois, a neighboring state, should not create undue hardship for the parties and their witnesses. *See DeJohn*, 245 F. Supp. 2d at 921. Moreover, SDI can simply assert the claims advanced in this forum as counterclaims in the Illinois suit filed by Big River.

Furthermore, there is no evidence that the forum selection provision was not freely negotiated. *See Nw. Nat'l Ins. Co.*, 916 F.2d at 377. Both parties are sophisticated businesses with no apparent disparity in bargaining power; the clause was legibly set forth in a separate paragraph on the back of the agreement along with eighteen other terms and conditions; and SDI had ample opportunity to read and understand the clause before signing and returning the agreement. *Id.* (rejecting an argument that the forum selection clause was an adhesion contract and not actually negotiated, stating that "[t]he questions are rather whether the parties had a reasonable opportunity to read and understand the term, and whether the term itself is unreasonable or oppressive"); *see also Cross*, 2001 WL 1558297, at *4 (N.D. Ill. Dec. 4, 2001); *Polar Mfg. Corp. v. Michael Weinig, Inc.*, 994 F. Supp. 1012, 1015-16 (E.D. Wis. 1998). Clearly, SDI was free to walk away from the purchase of zinc product from Big River if it thought the forum selection clause was unreasonable or oppressive. *See Anderson v. Res-Care, Inc.*, No. 1:05-CV-391, 2006 WL 842394 (N.D. Ind. March 27, 2006) (rejecting plaintiff's

---

[10] Whether a clause is indeed a forum selection clause "hinges on whether it contains mandatory or permissive language." *Cross v. Schneider Fin., Inc.*, No. 01 CV 90, 2001 WL 1558297, at *1 (N.D. Ill. Dec. 4, 2001) (distinguishing a permissive clause that expresses a *preference* for a certain forum from a mandatory one that states the parties have *selected* a particular forum); *see also Muzumdar*, 438 F.3d at 762; *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 755-56 (7th Cir. 1992). The clause at issue in the Butler Contract is indeed a valid forum selection clause, as it contains mandatory, not permissive, language, and SDI never argues otherwise.

argument that a forum selection clause in her employment agreement was not freely negotiated, reasoning that plaintiff "willingly chose her employment"). Finally, SDI never alleges that Big River's forum selection clause was a result of fraud or that the clause is overreaching.

Succinctly, "if [SDI] makes a habit of signing contracts without reading them, they must bear the consequences." *Polar Mfg. Corp.*, 994 F. Supp. at 1015 (citing *Nw. Nat'l Ins. Co.*, 916 F.2d at 378). Therefore, for the foregoing reasons, the Illinois forum selection clause contained in the Butler Contract is determined to be valid and enforceable.

## C. The Jeffersonville Contract

In contrast to the Butler Contract, Section 2-207 of the UCC commands a different result with respect to the Jeffersonville Contract. Significantly, there is no indication that SDI ever signed and returned the Jeffersonville Contract to Big River. Thus, because SDI never expressly agreed to the proposed forum selection clause and later forwarded its Purchase Order containing a conflicting forum selection clause to Big River, the original oral agreement, which was silent as to the forum for disputes, was never modified. *See Dale R. Horning, Co.*, 710 F. Supp. at 697-99; *see Echo, Inc.*, 121 F.3d at 1103-04; *Waukesha Foundry, Inc.*, 91 F.3d at 1008. In the absence of an agreed-upon forum selection clause, each party was entitled to bring an action with respect to the Jeffersonville Contract in any forum in which it could establish proper jurisdiction.

Notwithstanding the lack of an agreed-upon forum selection clause with respect to the Jeffersonville agreement, the circumstances here warrant that the disputes arising under the two agreements be heard in the same forum, because the agreements are "largely intertwined." *Photogen, Inc. v. Wolf*, No. 00 C 5841, 2001 WL 477226, at *2-4 (N.D. Ill. May 7, 2001) (holding that disputes arising from an employment agreement and a confidential disclosure

agreement, which were silent as to forum selection, had to be heard in the forum selected by the parties in a research agreement, because the three agreements were "largely intertwined"); *Sunbelt Healthcare Ctrs., Inc. v. Cont'l Textile Corp.*, No. 3:00CV463-H, 2001 WL 114353, at *2-3 (W.D.N.C. Feb. 7, 2001) (determining that disputes arising out of three leases must be heard in the forum identified in a mandatory forum selection clause contained in two of the agreements where a "lump sum pay-off of all three leases" was involved). In the instant case, the contracts were negotiated at the same time and arose from the same transaction. Perhaps even more importantly, the parties never identify the amount of zinc product that SDI was allegedly shorted under each contract; instead, both parties lump the contracts together by referring to them as the "October 21 agreements" and to a gross tonnage of zinc product in dispute with a gross amount of damages. (*See* SDI Compl. ¶¶ 12, 13, 15, 17, Ex. G; Big River Compl. ¶¶ 4, 10, 15, 24, 25.)

Therefore, since the Butler Contract contains a mandatory Illinois forum selection clause and the two agreements are largely intertwined, the Court concludes that any claims arising from the Jeffersonville Contract must also be litigated in Illinois. *See Photogen,* 2001 WL 477226, at *2-4; *Sunbelt Healthcare Ctrs.,* 2001 WL 114353, at *2-3.

### D. The SDI Complaint Will Be Dismissed

Since the Illinois forum selection clause is valid and enforceable, the Court's final step is to determine whether the instant case should be dismissed or, alternatively, transferred to the District Court for the Southern District of Illinois. Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which

15

it could have been brought." *See generally Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607-08 (7th Cir. 2003).

Here, since the Illinois suit is currently pending, there is no need to transfer the instant case in the interest of justice, *contra Cont'l Ins. Co.*, 354 F.3d at 607-08 (transferring case where its dismissal would result in the claims being barred in the proper jurisdiction by the applicable statute of limitations); *Polar Mfg. Corp.*, 994 F. Supp. at 1019. Rather, SDI may simply assert the claims contained in the SDI complaint as counterclaims in the Illinois suit. Accordingly, Big River's motion to dismiss the SDI complaint will be granted.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss, Stay or Transfer Action (Docket # 7) is GRANTED. The clerk is directed to enter a judgment in favor of Defendant, dismissing Plaintiff's complaint without prejudice.

SO ORDERED.

Enter for the 9th day of June, 2006.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge